[No. G002336. Fourth Dist., Div. Three. Apr. 24, 1985.]

EDITH V. GILL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
LEVER BROTHERS et al., Respondents.

**COUNSEL**

Banks, Leviton & Drass and Eugene Leviton for Petitioner.

Parker & Dally, Joan E. Partritz, Richard W. Youngkin, William B. Donohoe and Alvin R. Barrett for Respondents.

---

**OPINION**

**CROSBY, J.**—On September 29, 1982, Edith Gill injured her back in an on-the-job lifting accident. She underwent surgery two months later. After approximately one year, her treating physician declared her condition "permanent and stationary." He added Gill was "a candidate for certain types of job retraining and she will require the availability of medical follow-up in the future."

Several weeks later her employer's workers' compensation carrier advised she might be eligible for rehabilitation benefits, and she was referred to Workman Morris Associates for an evaluation. At the end of her two-week evaluation, the counselor noted Gill's "pain-related behaviors . . . [were] felt to contraindicate a return to work at this time" and concluded she did "not appear to be able to return to the competitive labor market." Based on this report, the employer petitioned the Bureau of Rehabilitation to suspend Gill's rehabilitation benefits. Gill, who agreed she was physically unable to participate in vocational rehabilitation, did not object. Pursuant to the Bureau's procedure, the file was closed, but no formal order issued.

The hearing in Gill's compensation case was held some six months later. Her offer of the vocational counselor's reports and testimony was denied "on the grounds that the applicant's testimony and the medical opinion of the doctors is the best evidence." The issue of Gill's permanent disability was submitted to a ratings specialist, who recommended a 77 percent permanent disability rating. The workers' compensation judge issued his "Findings and Award" on July 6, 1984. Gill was determined to have a 77 percent permanent disability and to be in need of further medical treatment.

Gill petitioned for reconsideration, claiming the judge erred in refusing to admit the reports and testimony of the vocational rehabilitation counselor. Gill argued evidence of her inability to compete in the labor market was relevant to her overall permanent disability rating. Citing *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234 [193 Cal.Rptr. 547, 666 P.2d 989], the Workers' Compensation Appeals Board (WCAB) granted the petition for reconsideration. On reconsideration, however, the WCAB determined the workers' compensation judge "properly rejected the less reliable secondary evidence regarding vocational rehabilitation" and affirmed the decision. The WCAB observed, "The testimony and reports of the vocational rehabilitation counselor are not admissible on the *LeBoeuf* principle because there was not strict compliance with the completion of the rehabilitation process through perfection of the appeal to the Board." We granted Gill's petition for writ of review and invited a response from the employer and the WCAB.

The WCAB declined our invitation: "As the Board has stated in other cases, because of its limited attorney resources, it believes that the primary duty to respond to a petition for writ of review should remain with the respondent real-party-in-interest. As a matter of policy the Board attempts to restrict its appearance to those cases where its rules of practice and procedure are attacked, a bona fide due process issue is raised, or where an unrepresented injured worker is named as respondent. [Citation.] The case before the Court does not fall within the above criterion [*sic*]. [¶] An additional reason for the Board not to appear in this case is that it believes that its December 5, 1984 Opinion and Decision After Reconsideration . . . clearly answers all contentions of petition. . . ." In our view, the petition does raise a bona fide due process issue and the WCAB's decision does not *correctly* answer the petition and must be annulled.

The WCAB's reliance on *LeBoeuf* to justify the judge's refusal to admit the testimony and written reports of the rehabilitation counselor is not supportable. We are not here concerned with the appropriate procedures to reopen an employee's hearing on his permanent disability rating and award. The issue in this case is more basic: Was relevant evidence of the employee's inability to participate in a vocational rehabilitation program improperly excluded in violation of her right to due process? The answer, obviously, is yes.

Evidence that an employee cannot participate in vocational rehabilitation *is* relevant to the issue of her or his permanent disability. Labor Code section 4660, subdivision (a) provides, "In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age

at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market." Moreover, the Supreme Court was unequivocal on the issue in *LeBoeuf:* "A permanent disability rating should reflect as accurately as possible an injured employee's diminished ability to compete in the open labor market. The fact that a worker has been precluded from vocational retraining is a significant factor to be taken into account in evaluating his or her potential employability." (*Id.,* at pp. 245-246.) The court concluded, "This is to ensure that the permanent disability rating upon which an award is based accurately reflects both the permanent medical and vocational disabilities." (*Id.,* at p. 243.)

A previous determination by the Bureau of Rehabilitation that an employee is not entitled to vocational benefits is not a prerequisite to evidentiary relevance, however. Indeed, that was the procedural posture of *LeBoeuf* itself. There, testimony and reports of rehabilitation counselors concerning the employee's "future employability in the open labor market" were received in evidence, although the Bureau of Rehabilitation had, by written order to which LeBoeuf did not object, deferred a determination as to whether he qualified for rehabilitation benefits. (*Id.,* at p. 238.) The situation here is analogous: At the employer's request, the Bureau of Rehabilitation closed its file because Gill was not medically able to participate in the program—a decision Gill did not oppose.

We find nothing in the *LeBoeuf* opinion to support the notion that an injured worker must obtain a concededly premature finding from the bureau before evidence of her vocational, as opposed to medical, disability is admissible in the disability proceedings. Both factors are essential to an accurate assessment of the employee's permanent disability. (Lab. Code, § 4660, subd. (a).) ■ Thus, evidence "pertinent" to this issue is relevant and may not be rejected because it is not the "best evidence." (Lab. Code, § 5700.) That hoary doctrine has only to do with proof of the contents of writings (see Evid. Code, § 1500), not evidentiary rulings grounded on preconceived notions of the superiority of one sort of evidence over another. While the judge's personal "better evidence rule"—which we assume is what he meant to say—may affect the weight he might have accorded to the testimony and reports of the counselor, it could not preclude their admissibility.

■ One final point deserves comment. The employer and workers' compensation carrier concede Gill is still medically eligible for rehabilitation benefits because she is unable to return to her former occupation (Cal. Admin. Code, tit. 8, § 10003, subd. (c); Lab. Code, § 139.5). But medical eligibility is only one prong of the test: An employee who is "unable to be

returned to suitable gainful employment through vocational rehabilitation services [is] 'not . . . a Qualified Injured Worker' [under the compensation laws, and does not] qualify for vocational rehabilitation benefits." (*LeBoeuf* v. *Workers' Comp. Appeals Bd.*, *supra,* 34 Cal.3d at p. 240.) Thus, should Gill apply for vocational rehabilitation benefits in the future, as the employer acknowledges she may, she will not be entitled to them unless she establishes the likelihood they will enable her to return to the labor force. If she eventually secures a determination by the bureau that she has no right to rehabilitation benefits, she will be in the same position as the applicant in *LeBoeuf* and entitled to reopen the compensation case, provided she timely appeals the bureau's decision pursuant to section 10008 of Title 8 of the California Administrative Code. (*Id.,* at p. 245.)

█ Conversely, if Gill applies for and completes a vocational rehabilitation program, the "*employer* may challenge [the] *prior* award of permanent disability . . . since [Gill's] permanent disability may have been reduced. (See *Tangye* v. *Henry C. Beck and Co.* [1978] 43 Cal.Comp.Cases [3,] 8)." (*Id.,* at pp. 243-244.) Thus, any permanent disability award made before the Bureau determines the injured worker's eligibility for rehabilitation benefits is subject to later review by *either* side. In the meantime, however, the injured worker is entitled to a permanent disability rating which "accurately reflects" her medical and vocational disabilities.

The order is annulled. The matter is remanded to the WCAB for a new hearing in which evidence from qualified rehabilitation counselors shall be permitted on the issue of the applicant's permanent disability.

Sonenshine, Acting P. J., and Wallin, J., concurred.

Respondents' petitions for review by the Supreme Court were denied July 10, 1985.