[No. B159820. Second Dist., Div. Seven. Oct. 31, 2003.]

NAJEE ALI, Plaintiff and Appellant, v.
L.A. FOCUS PUBLICATION et al., Defendants and Respondents.

1478

**1480**

COUNSEL

Law Offices of Leo James Terrell and Leo James Terrell for Plaintiff and Appellant.

Law Offices of Collins, Mesereau, Reddock & Yu and Angela J. Reddock for Defendants and Respondents.

OPINION

**PERLUSS, J.**—Najee Ali appeals the judgment entered after the trial court granted summary judgment in favor of defendant L.A. Focus Publication (L.A. Focus) and Jheryl Busby in Ali's action for wrongful termination and

related employment claims. Because triable issues of fact exist as to whether Ali was an employee of L.A. Focus and whether his employment was terminated for engaging in protected political speech outside the workplace, we reverse the judgment with respect to Ali's claim for wrongful termination in violation of public policy against L.A. Focus. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties and the Complaint*

L.A. Focus is a monthly newspaper published in Los Angeles; Busby is part owner of L.A. Focus. Ali, the founder and director of a nonprofit organization called Project Islamic Hope, was hired by L.A. Focus's publisher, Lisa Collins, in January 2000 to be the newspaper's community affairs editor. Later he was given the title "community affairs columnist."

On June 2, 2001, while a guest on a local radio show, Ali voiced his personal support for Antonio Villaraigosa, a candidate in the June 2001 Los Angeles mayoral election, and criticized United States Representative Maxine Waters for supporting Villaraigosa's opponent (and current Los Angeles Mayor) James Hahn. According to Ali, Waters was upset at Ali's public criticism of her on the radio show and successfully prevailed on Busby, her friend of 10 years, to terminate Ali's employment. Busby told Ali that, to appease Waters, he had "no choice" but to fire Ali. Ali was terminated less than one week after his appearance on the radio show. Ali sued L.A. Focus and Busby, asserting against L.A. Focus causes of action for wrongful termination in violation of public policy, breach of implied contract and breach of the covenant of good faith and fair dealing.[1]

### 2. *The Summary Judgment Motion of L.A. Focus*

L.A. Focus moved for summary judgment/summary adjudication on the ground that Ali was a freelance writer/independent contractor without standing to assert any employment-related claims. L.A. Focus included evidence that there was no written employment agreement or policy manual given to Ali and that his continued involvement with the newspaper could be terminated at either his or the paper's request. L.A. Focus paid Ali $75 for each article it accepted for publication and only after Ali submitted an invoice. Ali never requested or received a W-2 form from L.A. Focus and no Social

---

[1] Ali also sued Busby and L.A. Focus for intentional and negligent infliction of emotional distress. By stipulation, Ali withdrew the emotional distress claims against L.A. Focus and Busby. Those claims (the only claims filed against Busby) are not at issue in this appeal.

Security or state or federal income taxes were withheld. For the year 2000 Ali was paid a total of $750 and was issued an Internal Revenue Service form 1099. Ali was not issued a 1099 form in 2001 because he earned less than $600 for that year. During his tenure with L.A. Focus, Ali was the director of Project Islamic Hope and received a monthly salary from that organization.

According to Collins, Ali's articles for L.A. Focus were not written under the direction or supervision of anyone connected to L.A. Focus nor was Ali prohibited from submitting freelance articles to other publications. Ali began his involvement with L.A. Focus as a freelance writer and retained that status throughout his tenure with the newspaper. The newspaper identified Ali on its masthead as "community affairs editor," then later as "community affairs columnist," but those titles were gratuitous as Ali assumed no additional responsibility other than to submit his freelance articles for publication. No evidence was submitted with the moving papers as to L.A. Focus's reasons for terminating Ali's involvement with the newspaper.

Ali opposed the motion, submitting evidence contesting L.A. Focus's contention he was an independent contractor rather than an employee. Without disputing the method or amount of payment he received, Ali explained, by way of his own declaration and deposition testimony, that he originally was hired as a freelance contributor in 1999 but that his status changed in January 2000 when he was offered the position of community affairs editor and was given a raise from $50 per article to $75 per article. Once he became community affairs editor, Ali was told that he could not submit articles to other publications without the consent of L.A. Focus, which he twice obtained to submit commentaries to other newspapers. Of the freelance writers L.A. Focus had identified in discovery, Ali was the only one who attended weekly employee staff meetings, was given an office, a computer, and his own telephone extension. L.A. Focus also provided Ali with business cards that identified him as community affairs editor of L.A. Focus and listed the telephone and facsimile number of L.A. Focus. Ali worked at the newspaper between 30 and 40 hours per week, writing articles as well as assisting in the distribution of the paper, soliciting advertisers and helping the editor obtain interviews. L.A. Focus identified Ali as an "employee" when it obtained a press pass for him to cover the 2000 Democratic presidential convention held in Los Angeles. Contrary to Collins's declaration testimony, Ali maintained that he wrote his articles under the direction and control of Collins, who issued the writing assignment and then worked closely with him in editing and critiquing each article's content and style in preparation for its publication. Collins also controlled the content of Ali's articles, telling him he could not write critically about Busby's friends, including, but not limited to, Representative Waters.

According to Ali's evidence, in September 2000 Collins told Ali that the paper's large Christian readership may be upset by having a non-Christian editor[2] and that to appease the readership, she was changing his title to community affairs columnist. Ali agreed to the change in title after Collins assured him that his responsibilities, payment and status with the newspaper would remain unchanged. Within days after he appeared on the radio show and criticized Representative Waters, Busby telephoned Ali and told him that Waters was upset with his comments on the radio show and that, unable to "take the political heat," Busby had no choice but to fire Ali.

The trial court, finding that Ali was an independent contractor and, alternatively, that the termination of Ali did not violate public policy as a matter of law, granted summary judgment in favor of L.A. Focus. Ali filed a timely notice of appeal.[3]

## CONTENTION

Ali contends triable issues of fact exist as to whether he is an employee or independent contractor and whether the termination of his employment was in retaliation for his protected political activity in violation of public policy.

## DISCUSSION

### 1. *Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that

---

[2] L.A. Focus is at times described by Collins and Busby as a "Christian publication." Ali is a Muslim.

[3] Ali's notice of appeal, filed after the order granting summary judgment but before judgment was entered, is timely. (See Cal. Rules of Court, rule 2(d)(1) ["A notice of appeal filed after judgment is rendered but before it is entered is valid and is treated as filed immediately after entry of judgment."].)

cause of action . . .' (Code Civ. Proc., § 437c, subd. (o)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854–855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

██ In reviewing the evidence, we strictly construe the moving party's evidence and liberally construe the opposing party's, accepting as undisputed only those portions of the moving party's evidence that are uncontradicted. "Only when the inferences are indisputable may the court decide the issues as a matter of law. If the evidence is in conflict, the factual issues must be resolved by trial. 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.' [Citation.]" (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540].)

> 2. *Because the Parties Did Not Obtain Rulings on Their Evidentiary Objections, We Consider All the Evidence Proffered by Both Parties*

Although both sides filed written objections to portions of the evidence proffered in connection with the motion for summary judgment, the trial court did not rule on the objections. Neither party requested a ruling at the hearing. Accordingly, the objections are waived. (*Sharon P. v. Arman Ltd.* (1999) 21 Cal.4th 1181, 1186, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121]; *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 624 [124 Cal.Rptr.2d 556].)

> 3. *Triable Issues of Material Fact Exist as to Whether Ali Was an Employee or an Independent Contractor*

██ The cause of action for wrongful termination in violation of public policy is an exception to the general rule that an employer has an unfettered right to terminate an at-will employee: Although an employer has the right to terminate at-will employees for any or no reason, even an arbitrary or irrational reason, the employer does not have the right to terminate an employee in violation of a substantial and fundamental public policy. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*); *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889–890 [66 Cal.Rptr.2d 888, 941 P.2d 1157] (*Stevenson*); *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 169–170 [164 Cal.Rptr. 839, 610 P.2d 1330] (*Tameny*).)

Several appellate courts, including Division Four of this court, have held that, because independent contractors are not employees, they lack standing to assert a claim for wrongful termination in violation of public policy. (See

*Sistare-Meyer v. Young Men's Christian Assn.* (1997) 58 Cal.App.4th 10, 17–18 [67 Cal.Rptr.2d 840]; *Abrahamson v. NME Hospitals, Inc.* (1987) 195 Cal.App.3d 1325, 1329–1330 [241 Cal.Rptr. 396].)[4] Without challenging these holdings, Ali contends he was an employee at the time he was terminated.

Generally, whether a plaintiff was an employee or independent contractor is a question of fact that depends on the trier of fact's evaluation of several factors, most notably whether the putative employer has the right to control not only the result but also the means by which the work is accomplished. (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350–351 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*).) Other factors relevant to the determination include "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." (*Id.* at p. 351, citing Rest.2d Agency, § 220.) In addition, evidence that the relationship could be terminated by either party without cause is strong evidence of an at-will employment relationship. (*Borello,* at p. 350; *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 949 [88 Cal.Rptr. 175, 471 P.2d 975].)

L.A. Focus insists that Ali was an independent contractor as a matter of law, relying almost exclusively on the undisputed evidence regarding the manner in which he was paid, including the relatively nominal amount it paid Ali and the fact that no taxes were withheld. That Ali was paid by the article rather than given a guaranteed monthly salary is certainly indicative of an independent contractor status. (See, e.g., *D.A.R.E. America v. Rolling Stone Magazine* (C.D.Cal. 2000) 101 F.Supp.2d 1270, 1280 [applying California law].) But that fact alone is not dispositive if other indicia of an employer-employee relationship exist, particularly evidence that the employer controlled not only the result but also the means by which the result was accomplished. (*Borello, supra,* 48 Cal.3d at p. 351 [factors are not to be mechanically applied; " 'they are intertwined and their weight depends often

---

[4] The Supreme Court has not decided the issue. Because Ali does not challenge the trial court's ruling that independent contractors may not assert a common law cause of action for wrongful discharge in violation of public policy (the "classic *Tameny* cause of action"), we also need not address that question at this time.

on particular combinations' "]; cf. *Tieberg v. Unemployment Ins. App. Bd.,* *supra,* 2 Cal.3d at p. 946 [writers for television producer who worked on their own time with their own instrumentalities were nonetheless employees because the producer controlled the manner in which the writers wrote and delivered the teleplay].)

■ Similarly, neither the small amount of payment nor the failure to withhold taxes is controlling. (See *Eye v. Kafer, Inc.* (1962) 202 Cal.App.2d 449, 453 [20 Cal.Rptr. 841] [monetary compensation is not necessary element of employer/employee relationship]; *Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 877 [269 Cal.Rptr. 647] [employer's failure to withhold income taxes is "merely the legal consequence of an independent contractor status not a means of proving it. An employer cannot change the status of an employee to one of independent contractor by illegally requiring him to assume burdens which the law imposes directly on the employer"]; *Truesdale v. Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 608, 617 [235 Cal.Rptr. 754].)

■ L.A. Focus also argued in support of summary judgment that it controlled only the result and not the means by which Ali produced his articles. However, this point is disputed. Ali provided evidence that his articles were written under the direction and control of Collins, who worked closely with him critiquing the articles' content and style. (Cf. *D.A.R.E. America v. Rolling Stone Magazine, supra,* 101 F.Supp.2d 1270 [editor's fact checking and "cursory review" of article prior to publication did not render relationship with reporter one of employer-employee], affd. (9th Cir. 2001) 270 F.3d 793.) L.A. Focus also required that Ali obtain Collins's consent before submitting articles to other publications. The parties also disputed whether Ali attended or was required to attend weekly staff meetings, whether L.A. Focus provided him with an office, computer and a receptionist to take messages on his behalf, and whether he assisted Collins in other editorial duties. Ali also submitted evidence that none of the people whom L.A. Focus identified as "freelance writers" was afforded the instrumentalities L.A. Focus gave to him nor were they required to attend staff meetings. It is also of some dispute whether L.A. Focus identified Ali as an employee when it obtained a press pass for him. Because it is possible on this record for a reasonable trier of fact to find, more likely than not, that Ali was an employee, the court's resolution of this issue as a matter of law was error.

4. *L.A. Focus Failed to Meet Its Initial Burden to Show That Ali's Cause of Action for Wrongful Termination in Violation of Public Policy Is Without Merit*

Whether Ali was an independent contractor or an at-will employee, L.A. Focus asserts it was entitled to terminate its relationship with Ali for speaking

in a manner that contravened the editorial policy of the paper and, therefore, Ali failed to set forth any public policy violated by his discharge. The trial court agreed, relying on its interpretation of *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359 and *Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814 [118 Cal.Rptr.2d 807]. L.A. Focus's argument fundamentally misconceives the nature of the tort at issue.

■ To prevail on a claim for wrongful termination in violation of public policy, the employee must identify a policy allegedly violated that is both "substantial" and "fundamental" and rooted in constitutional or statutory law. The policy, furthermore, must be " 'public' in the sense that it 'inures to the benefit of the public' " rather than to the purely personal or proprietary interest of the plaintiff or the employer, and articulated or well established at the time of discharge. (*Stevenson, supra,* 16 Cal.4th at p. 890; *Green v. Ralee Engineering Company* (1998) 19 Cal.4th 66, 75–76, 79 [78 Cal.Rptr.2d 16, 960 P.2d 1046].)

The public policy prohibiting employers from terminating an employee for engaging in political activity is found in Labor Code section 1101, which provides: "No employer shall make, adopt, or enforce any rule, regulation, or policy: [¶] (a) Forbidding or preventing employees from engaging or participating in politics . . . [or] [¶] (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees." Labor Code section 1102 provides: "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

Unlike statutes that "simply regulate conduct between individuals or impose requirements whose fulfillment does not implicate fundamental public policy concerns" (see, e.g., *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 669 [254 Cal.Rptr. 211, 765 P.2d 373]), ■ Labor Code sections 1101 and 1102 reinforce the substantial public interest in protecting the "fundamental right" of employees to engage in political activity without interference or threat of retaliation from employers. (*Fort v. Civil Service Commission* (1964) 61 Cal.2d 331, 335 [38 Cal.Rptr. 625, 392 P.2d 385]; cf. *Jersey v. John Muir Medical Center, supra,* 97 Cal.App.4th at p. 822 [hospital's termination of employee who sued former patient in personal injury action did not violate public policy because, although employee had the "right" to sue, no statutory or constitutional provision specifically protected employee's job in connection with that conduct].) ■ Nor is there any doubt that the statutory protection for an employee's political activity, particularly political speech, inures to the public at large rather than simply to the individual or proprietary interests of the employee or employer. (Cf.

*Buckley v. Valeo* (1976) 424 U.S. 1, 14 [46 L.Ed.2d 659, 96 S.Ct. 612] [public discussion and debate on the qualifications of candidates are integral to the operation of the system of government established by the United States Constitution]; *Monitor Patriot Co. v. Roy* (1971) 401 U.S. 265, 272 [28 L.Ed.2d 35, 41, 91 S.Ct. 621, 625] [the constitutional protection to be afforded political speech enjoys its "fullest and most urgent application" in connection with "campaigns for political office"].)

Notwithstanding Labor Code sections 1101 and 1102, purporting to rely on *Eisenberg v. Alameda Newspapers, Inc., supra,* 74 Cal.App.4th at page 1391, L.A. Focus insists it has the unfettered right to terminate an employee for any speech or conduct that is inconsistent with the newspaper's editorial policies. *Eisenberg,* however, presented a very different situation from the one now before us.

In *Eisenberg* a reporter alleged he had been terminated for statements he wrote in an investigative article published in the Tri-Valley Herald, owned by his employer Alameda Newspapers, Inc. Affirming the trial court's summary adjudication of the reporter's claim for wrongful termination in violation of public policy, the Court of Appeal explained that a private publisher enjoys an absolute right to decide what to publish in its own paper. (*Eisenberg v. Alameda Newspaper, Inc., supra,* 74 Cal.App.4th at p. 1391.) The reporter may have the right to express his views, the court reasoned, but he did not enjoy the right to have his employment protected when his published statements contradicted the editorial standards of the paper: "[I]t was the Herald's right to set and enforce its own standards for acceptable and responsible reporting. Eisenberg was fired because he did not meet those standards. Although Eisenberg has a First Amendment right to express his own views, he does not have a right to publish them in the Herald against its wishes." (*Ibid.*)

*Eisenberg* plainly has no application here. Ali asserts he was fired not because the content of his articles contravened the editorial policies or standards of the newspaper, but because outside of the workplace he publicly criticized an influential public official for supporting a particular political candidate. Whether Ali can ultimately prove all the elements of his claim, he has submitted sufficient evidence of a public policy violation to survive a motion for summary judgment.[5]

---

[5] L.A. Focus suggests Ali was actually terminated because his "Muslim philosophies" were no longer "in sync" with the newspaper's Christian readership, not for his criticism of Representative Waters. Not only is there no evidentiary support for this assertion, but also this contention, at most, raises a material issue of fact as to the reason for Ali's discharge. Because it is unnecessary to our decision, we do not comment on the legitimacy of L.A. Focus's alternative explanation for its conduct. (But see *Silo v. CHW Medical Foundation* (2002) 27

5. *Ali's Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Were Properly Adjudicated Against Him*

■ In the absence of an express or implied contact to terminate only for cause, employment is statutorily presumed to be "at-will." (*Guz, supra,* 24 Cal.4th at p. 340; Lab. Code, § 2922.) Here, L.A. Focus established that it at no time promised Ali he would enjoy continued employment with the magazine. No evidence was presented by Ali to the contrary. In fact, in his separate statement Ali observed that both he and L.A. Focus presumed he was a "at-will employee." Having failed to demonstrate any triable issue of fact as to the existence of an implied contract to terminate only for cause, this cause of action was properly adjudicated against Ali.

■ The cause of action for breach of the implied covenant of good faith and fair dealing similarly depends on the existence of an enforceable contract. In the absence of a contract, there is no cause of action for breach of the implied covenant. (*Guz, supra,* 24 Cal.4th at p. 353.) Summary adjudication of this cause of action against Ali was proper as well.

## DISPOSITION

The judgment is reversed with respect to Ali's claim for wrongful termination in violation of public policy and remanded for further proceedings not inconsistent with this opinion. In all other respects, the judgment is affirmed. Each party shall bear his or its own costs on appeal.

Johnson, J., and Woods, J., concurred.

---

Cal.4th 1097, 1108 [policy against religious discrimination generally must yield to "public policy of permitting religious employers considerable discretion to choose employees who will not interfere with their religious mission or message"].)