[Civ. No. 33629. First Dist., Div. Two. Mar. 18, 1975.]

OSMER B. GOURLEY, Plaintiff and Appellant, v.
CITY OF NAPA, Defendant and Respondent.

## COUNSEL

William T. Hays, Seth J. Kelsey and Edward T. Flaherty for Plaintiff and Appellant.

Davis, Cowell & Bowe and Alan C. Davis as Amici Curiae on behalf of Plaintiff and Appellant.

Frank L. Dunlap, City Attorney, and W. Scott Snowden, Deputy City Attorney, for Defendant and Respondent.

Richard L. Knickerbocker, City Attorney (Santa Monica), Rosario Perry, Deputy City Attorney, Chalmers E. Lones, City Attorney (Signal Hill), Warren J. Lynch, City Attorney (Salinas), and Raymond M. Haight, Assistant City Attorney, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**TAYLOR, P. J.**—On this appeal by plaintiff, O. B. Gourley, from that portion of a judgment denying his petition for a writ of mandate, the only question presented is whether the respondent, City of Napa, violated Government Code section 21025.5 when it refused to pay Gourley full salary pursuant to Labor Code section 4850 for the 12-month period that followed the date of his industrial injury on December 19, 1971. For the reasons set forth below, we have concluded that the full salary benefits of Labor Code section 4850 may be terminated by the employer's initiated retirement pursuant to Government Code sections 21023, subdivision (c), and 21023.5; therefore, the portion of the judgment that is the subject of this appeal must be affirmed.

The appeal is on an agreed statement that sets forth the following pertinent facts: On December 31, 1948, Gourley was hired by the city as a full-time fireman, and continued to work until December 19, 1971, when he suffered a job-related total disability.

The city contracts with the Public Employees Retirement System (PERS) to provide retirement benefits for its employees. Upon the occurrence of his disability, Gourley was placed on leave of absence

without loss of salary pursuant to Labor Code section 4850. Pursuant to this statute, the temporary disability payments that would otherwise have been payable to Gourley by the city's workmen's compensation insurer were paid to the city.

On June 30, 1972, the city's workmen's compensation insurance carrier notified Gourley and the city that Gourley's condition had become permanent and stationary as of March 27, 1972. Upon receipt of this notification, the city terminated payments to Gourley under Labor Code section 4850 and applied to the PERS for disability retirement of Gourley to be effective July 1, 1972. Copies of the documents submitted to PERS as application for his retirement were furnished to him.

On July 5, 1972, the city made a payment to Gourley consisting of all salary payments, all vacation payments, holiday payments, and all other allowances due him through June 30, 1972. Gourley accepted this payment.

On July 11, 1972, Gourley's attorney wrote to PERS stating that Gourley did not consent to the retirement date sought by the city. On the same date, Gourley's attorney wrote to the city enclosing a copy of his letter to PERS and demanded that the city continue injury leave benefits pursuant to Labor Code section 4850 for a total of one full year.

On August 15, 1972, a letter was sent to Gourley by PERS stating that he would be "retired forthwith" provided he had received all sick leave with compensation, compensating time off for overtime or other leave of absence with compensation which he was "entitled to receive."

On August 24, 1972, Gourley wrote to the chief of the city fire department requesting that he be put on sick leave effective July 1, 1972. As of June 30, 1972, Gourley had accumulated 60¾ shifts of sick leave according to the city's accumulation computation procedures. He concedes that this is the correct amount of accumulated sick leave due him as of June 30, 1972.

On August 30, 1972, Gourley requested that his case be placed on the September agenda of the city's civil service commission. On September 19, 1972, the city civil service commission met and Gourley's attorney presented the claim for compensation for accumulated sick leave. A representative of the city attorney's office was not present at that meeting, as in cases of this sort the civil service commission is strictly an advisory body to the city council. The civil service commission made a negative recommendation.

On September 25, 1972, at the regularly scheduled meeting of the city council, Gourley's attorney again presented his request to be compensated for accumulated sick leave. The city council voted to extend Gourley's leave of absence without loss of salary pursuant to Labor Code section 4850 through August 15, 1972, on the basis of the letter of August 15, 1972, from PERS to Gourley that it interpreted to indicate that Gourley's retirement date would be August 15, 1972. The city council also voted not to pay him for accumulated sick leave, on the basis that the city's procedure upon retirement for recompensing accumulated sick leave of a retired employee is to pay an amount equal to one month's health plan premium for each day of accumulated sick leave.

On October 3, 1972, the city wrote to PERS that Gourley had been paid for all overtime and compensating time off and that sick leave reimbursement had been commenced pursuant to the applicable rules of the civil service commission.

On October 5, 1972, the city sent payment to Gourley for leave of absence with compensation pursuant to Labor Code section 4850 for the period of July 1, 1972, through August 15, 1972. Gourley refused to accept this payment on the basis that it was inadequate. The above-mentioned check sent to Gourley by the city on October 5, 1972, for leave of absence without loss of salary pursuant to Labor Code section 4850 was computed on the basis of Gourley's base pay and did not include an educational and training pay incentive figure. The city has established an educational and training pay incentive program for police and fire department personnel by a resolution of the city council. The city concedes that had Gourley been a working employee, he would have been eligible to avail himself of this program, as prior to June 30, 1972, he had acquired the education necessary to qualify him for a 10 percent incentive pay increase pursuant to that program for the 1972-1973 fiscal year; Gourley made application for incentive pay on April 14, 1972.

■ Gurley argues that his retirement has not become effective and cannot without his consent become effective prior to receipt of the year's leave of absence without loss of salary under Labor Code section 4850, and receipt of accrued sick leave.

Labor Code section 4850 provides, in pertinent part: "Whenever any. . . city fireman. . .who is a member of the Public Employees' Retirement System. . .is disabled, whether temporarily or permanently, by injury or

illness arising out of and in the course of his duties, he shall become entitled, regardless of his period of service with the city. . . to leave of absence while so disabled without loss of salary, in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, *or until such earlier date as he is retired on permanent disability pension.*" (Italics added.)

A careful reading of Labor Code section 4850 indicates that an employee does not have an absolute right to leave of absence for one year. If he "is retired on permanent disability pension" prior to the end of the one-year period, his right to his leave of absence with full salary terminates.

*Eason* v. *City of Riverside,* 233 Cal.App.2d 190 [43 Cal.Rptr. 408], clearly so indicates. In that case, a police officer employed by the city was injured while acting within the course and scope of his employment. He was retired on permanent disability pension at the request of the chief of police. He had received his full salary from the date of his injury until the date of his retirement. Nonetheless, he sought to recover an additional 19 5/7 weeks of leave of absence salary to constitute a total of one year's leave of absence. He mistakenly believed that he had an unfettered right to a one-year leave of absence at full salary under section 4850 of the Labor Code. The court, at pages 193 and 194, examined the language of the statute, "not exceeding one year, or until such earlier date as he is retired on permanent disability pension," and noted that the two phrases are joined by the conjunction "or." The court then explained that it was mindful of the policy to liberally construe provisions of the Labor Code, but held that ". . . to hold the word 'or' joins independent provisions of section 4850, and not alternative provisions, goes beyond a liberal construction; it would pervert the plain language of the statute." The court continued, "We conclude that when appellant was retired at an 'earlier date' his right to leave of absence with full pay terminated."

If the Legislature had intended to give a disabled employee an absolute right to leave of absence with pay for one year, in all probability it would not have included the words "or until such earlier date as he is retired on permanent disability pension" in Labor Code section 4850. We also note that Labor Code section 4800, pertaining to members of the California Highway Patrol, the Bureau of Narcotic Enforcement and the Bureau of Criminal Identification, omits the above quoted phrase. Thus,

as to those individuals, the one-year leave of absence with pay is an absolute right.

In like manner, if the Legislature had intended that the employee's retirement (and subsequent termination of his leave of absence under § 4850) was to be at his option, it would not have included the wording "is retired" in the subject statute. This phrase clearly indicates that the time for retirement for disability reasons is not a matter which the employee controls. If this were the intent of the Legislature, it could have expressed that intent by substituting the word "retires" or the words "applies for retirement" for the subject phrase. This legislative intent is further indicated in section 21023.5 of the California Government Code, which provides: "Notwithstanding any other provision of law, *an employer* may not separate because of disability a member otherwise eligible to retire for disability but *shall apply for disability retirement of any member believed to be disabled,* unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20393." (Italics added;[1] see also *Martinez* v. *Contra Costa County Fire Protection Dist.,* 44 Cal.App.3d 321 [118 Cal.Rptr. 614].)

Gourley relies on *Boyd* v. *City of Santa Ana,* 6 Cal.3d 393 [99 Cal.Rptr. 38, 491 P.2d 830], to support his contention that he is entitled to a full year's leave of absence with pay. However, this is not the holding of *Boyd.*

In *Boyd,* the city had *terminated* the employment of a police sergeant on the ground that he was physically unable to perform his duties. He

---

[1]Any ambiguity in the law as to allocation of the responsibility for determination of an employee's retirement date has now been further clarified by the addition of Government Code section 21023.6, added by Statutes of 1973-1974, effective October 2, 1973.

Government Code section 21023.6 provides: "Notwithstanding any other provision of this part, a local safety member shall be retired for disability only upon his employer's determination that he is incapacitated physically or mentally for the performance of the duties of his position and termination of his employment for that reason. The employer or, on application of either the employer or the member in the event of dispute, the Workmen's Compensation Appeals Board in accordance with this article shall determine whether the disability is industrial. Notwithstanding Section 21025.5, in the event of a dispute over the effective date of the disability retirement, the retirement shall be effective on the date the employee's condition is permanent and stationary as found by the Workmen's Compensation Appeals Board. Any local safety member retired for disability shall not be reinstated from retirement except upon the determination of the employer from whose employment he was retired that he is no longer incapacitated for the duties of the position held when retired."

was not compensated for the period following his termination. The Supreme Court held (at p. 398) that in reference to Labor Code section 4850, "The purpose of the section is obviously to provide for full salary during the period between the city's determination and the commencement of the pension."

In the instant case, the city agreed with Justice Peters' analysis of the statute in *Boyd, supra.* The agreed facts indicate that Gourley received "full salary during the period between the city's determination and the commencement of the pension." This is in conformity with the interpretation of Labor Code section 4850, as set forth in *Boyd, supra.* We note that *Boyd* involved the reinstatement of a city employee who had been *terminated,* whereas the instant case involves a retirement initiated by an employer pursuant to applicable state law. ·

Gourley also cites section 21025.5 of the Government Code in support of his contentions. That statute provides: "Notwithstanding any other provision of this article, the retirement for disability of a member who *has been granted or is entitled to a leave of absence* with compensation, shall not become effective prior to the expiration of such leave of absence with compensation, unless the member applies for or consents to his retirement as of an earlier date." (Italics added.)

Gourley attempts to utilize this section to vitiate the clear dictates of Labor Code section 4850, discussed above. This is not a proper interpretation of this statute. Before section 21025.5 of the Government Code can be made applicable to an employee, he must *have been granted or have been entitled to* a leave of absence with compensation. This section does not, in itself, grant or entitle the employee to such leave of absence. And, as discussed above, Labor Code section 4850 provides for a leave of absence only up until the employee is retired. Therefore, it is incumbent upon Gourley to cite other authority that would entitle him to a leave of absence; this he has not done.

■ Since the personnel policies of a municipality are "municipal affairs," a chartered city has the authority to administer in this area. In *Bishop* v. *City of San Jose,* 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137], our Supreme Court discussed the subject of "municipal affairs" at some length and held that the matter of setting and payment of salaries to city employees was a municipal affair and, thus, Labor Code provisions establishing a prevailing wage law were not applicable to charter cities.

The court explained, at page 63, that: "In exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation [citation], and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. However, the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs, nor does it impair the constitutional authority of a home rule city or county to enact and enforce its own regulations to the exclusion of general laws if the subject is held by the courts to be a municipal affair rather than of statewide concern; stated otherwise, the Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern."

The city's policies in dealing with injured employees are set forth in the exhibits attached to the agreed facts. As will be noted, at no time between the injury to an employee and his retirement is the employee deprived of full salary. The city argues that the provisions of Labor Code section 4850 dictate that the injured employee be paid full salary until he is retired. If a municipality wishes to maintain an employee on its payroll after he is "permanent and stationary," it may do so, but it is not required to do so. This is a "municipal affair" over which a chartered city has control. It is the policy of the city to retire an individual if he is "permanent and stationary" and unable to perform his duties. Thus, Gourley is not entitled to further leave of absence under the personnel policies of the city.

In the present case, the city granted Gourley a leave of absence pursuant to Labor Code section 4850 and that leave of absence terminated upon his retirement. However, Gourley has failed to demonstrate that he is entitled to a further leave of absence. Therefore, section 21025.5 of the Government Code is not applicable in the present case.

We conclude from *Eason* and *Boyd, supra,* as well as the applicable statutes, that it is the policy of the state to insure that an employee disabled in the performance of his duties is not deprived of his livelihood pending his retirement for reasons of disability. It is equally apparent that the Legislature and the courts do not intend that a disabled

employee should be compensated by a city for performing no services for that city. If it is determined that the employee no longer has the capacity to perform the duties of his position, it is incumbent upon the city to apply for the employee's retirement through the PERS. It is patently illogical to argue that an employee who is unable to perform services for a city should nonetheless be allowed to place a drain on the finances of that city, as well as to retain a position in his particular department and thus prevent the city from employing an individual who is capable of performing the duties required of him. An individual who is incapacitated and has no reasonable expectation of recovering sufficiently to perform his duties should be retired for disability reasons. In the instant case, it has been determined that Gourley is unable to perform the duties required of him. The city has followed the mandate set down by the state Legislature in the Labor Code and the Government Code and has paid him his full salary up to the date of his retirement. It is now Gourley's responsibility to look to the PERS for retirement benefits. It is not the responsibility of the city to provide those benefits.

Affirmed.

Kane, J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1975.