[No. A080369. First Dist., Div. Two. Dec. 15, 2000.]

CITY OF MARTINEZ et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and RHONDA
BONITO, Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

602

604

**COUNSEL**

Mullen & Filippi, James W. Giffin and Robert Cavallero for Petitioners.

Randall Paddock for Respondent Workers' Compensation Appeals Board.

Gearheart & Otis and Mark E. Gearheart for Respondent Rhonda Bonito.

## OPINION

**LAMBDEN, J.**—In this case we hold that a municipality cannot invoke former Government Code section 21025.4 (hereafter Government Code section 21164)[1] to retire a police officer without her consent on an industrial disability pension under the Public Employees' Retirement System (PERS) solely because her work-related condition is "permanent and stationary" when the officer concomitantly is entitled to a leave of absence without loss of salary in lieu of maintenance allowance payments under Labor Code[2] section 139.5, subdivision (c)[3] while engaged in vocational rehabilitation pursuant to the express provisions of section 4850.

Petitioner City of Martinez (City) seeks review of the decision by the Workers' Compensation Appeals Board (Board) ordering it to pay respondent Police Officer Rhonda Bonito (applicant) the balance of her one-year section 4850 benefits in lieu of maintenance allowance payments under section 139.5(c). City maintains applicant is not entitled to section 4850 benefits because the parties have stipulated applicant's condition is permanent and stationary according to medical evidence. This stipulation gives it the unqualified right, argues City, to retire applicant consistent with Government Code section 21164 and, therefore, terminate entitlement to Labor Code section 4850 benefits, notwithstanding applicant's participation in vocational rehabilitation. We disagree. Although we affirm the result reached by the Board, we granted review because we find no decisional law directly discussing the complex issues presented in this case.

---

[1]For purposes of clarity, we will use Government Code section 21164 when referring to Government Code section 21025.4.

The latter was in effect at the time of the 1991 and 1992 industrial injuries herein. However, it was repealed, renumbered and replaced in 1995 by Government Code section 21164, which contains virtually identical language. "It is the intent of the Legislature in enacting this act to reorganize the Public Employees' Retirement Law and the Internal Revenue Code Compliance and Replacement Benefit Program in order to facilitate administration. It is not the intent of the Legislature to make any substantive change in the law. . . . No current or future benefit under this act shall be revised in any way because of this act." (Historical and Statutory Notes, 33B West's Ann. Gov. Code (2000 supp.) foll. § 20000, p. 58.) The full text of Government Code section 21164 will be set forth *post.* Former Government Code section 21025.4 provided: "Notwithstanding any other provision of this article, the retirement for disability of a local safety member, other than a school safety member, shall not be effective without the member's consent earlier than the date upon which leave of absence without loss of salary under Section 4850 of the Labor Code because of such disability terminates, or the earlier date during such leave as of which such disability is permanent and stationary as found by the Workmen's Compensation Appeals Board." (Added by Stats. 1975, ch. 655, § 5, p. 1416; amended by Stats. 1990 (1989-1990 Reg. Sess.) ch. 658, § 27, p. 3172, eff. Sept. 12, 1990; repealed by Stats. 1995, ch. 379, § 1.)

[2]All further statutory references are to the Labor Code unless otherwise noted.

[3]Hereafter referred to as section 139.5(c) for convenience.

## FACTS AND PROCEDURAL HISTORY

The pertinent facts are not disputed. City employed respondent applicant as a full-time police officer when she sustained industrial injuries to her right knee on September 17, 1991, and February 12, 1992. Originally, by stipulated Board award on March 22, 1994, the parties agreed to a permanent partial disability rating of 15½ percent and a precautionary need for future medical treatment. Following two surgeries and light duty assignments in the parking reimbursement program, the condition of applicant's knee eventually declined to the point where she could no longer perform the full-time patrol duties required of a police officer. Applicant's temporary light duty position ended on June 16, 1995, her last date of employment with City.

Applicant's treating physician, Frederic W. Bost, M.D., had reported to City on May 1, 1995, stating applicant's medical condition was "permanent and stationary" for rating her permanent disability, and she was a "qualified injured worker" ready for vocational rehabilitation. A petition to reopen had been timely filed.

City commenced vocational rehabilitation services. However, City refused to pay applicant the balance of her section 4850 benefits in lieu of maintenance allowance payments. Instead, City advanced PERS disability pension payments under section 4850.3 and sought to retire applicant on a PERS industrial disability pension, effective June 17, 1995. Applicant disputed the separation date, claiming entitlement to the balance of her section 4850 benefits while she was participating in vocational rehabilitation.[4]

A pretrial hearing was held before the workers' compensation administrative law judge (WCJ) on August 25, 1995. At the hearing, the parties stipulated to June 16, 1995, the last date applicant worked for City, as the date her condition was "permanent and stationary." Pretrial briefs were filed. The case proceeded to trial on September 22, 1995. The WCJ deemed the matter submitted on October 10, 1995, after the parties filed posttrial briefs.

On October 18, 1995, the WCJ ordered submission vacated for further briefing, stating as pertinent: "Parties having stipulated that applicant's condition became medically permanent and stationary as of June 16, 1995;

---

[4]From what we can ascertain from the record, as of November 13, 1994, when applicant returned to work in a light duty capacity, City had paid approximately 186 days of section 4850 benefits in lieu of temporary disability, leaving applicant approximately 179 days of available section 4850 benefits remaining to be paid in lieu of temporary disability or maintenance allowance payments.

parties having briefed the issue of whether [City] under [Government Code section 21164], could without applicant's consent, unilaterally elect to retire applicant effective June 17, 1995, prior to her condition becoming permanent and stationary vocationally as relating to entitlement of [section 4850] one year salary; the undersigned having reviewed the recent decision of [*Fogle v. Workers' Comp. Appeals Bd.* (*Fogle*) (1995) 60 Cal.Comp.Cases 760, writ denied], *Fogle* having not been addressed by the parties . . . ."

The parties briefed *Fogle* in light of an earlier Board panel decision after reconsideration, *Tognetti v. Town of Hillsborough* (WCAB) SFO 354134, 356695, filed on June 10, 1992, which reached the opposite result. Like *Fogle,* review was summarily denied by Division Four of this appellate court. (*Tognetti v. Workers' Comp. Appeals Bd., Town of Hillsborough* (1993) 58 Cal.Comp.Cases 170, writ den.) The record in the case at bar contains *Tognetti, supra,* SFO 354134, 356695, as well as the Board panel opinion and order denying reconsideration in *Fogle* (*Fogle v. City of South San Francisco* (WCAB, Jan. 13, 1995) SFO 367313). *Fogle* supported City's position; and *Tognetti* supported applicant's position.

Following submission after additional briefing, the WCJ issued his decision, finding applicant's condition was "medically permanent and stationary" on June 16, 1995. However, the WCJ further determined applicant's condition was not "vocationally permanent and stationary." Hence, City could not invoke Government Code section 21164 to retire applicant without her consent while she was undergoing vocational rehabilitation. The WCJ ordered City to pay applicant the balance of her section 4850 benefits until completion of vocational rehabilitation. The WCJ did not find the Board decision in *Fogle* dispositive.

The Board granted City's petition for reconsideration. The Board likewise was not persuaded by *Fogle* and soundly rejected City's position that the 1989 amendment to section 139.5(c) creating "maintenance allowance" payments changed the meaning of "permanent and stationary" as defined by the Supreme Court. (*LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 242-243 [193 Cal.Rptr. 547, 666 P.2d 989] (*LeBoeuf*), citing with approval *Ponce De Leon v. Glaser Bros.* (1977) 42 Cal.Comp.Cases 962, 968 (*Ponce De Leon*) and *Tangye v. Henry C. Beck and Co.* (1978) 43 Cal.Comp.Cases 3, 7 (*Tangye v. Beck*). Citing *LeBoeuf, Tangye v. Beck* and *Ponce De Leon,* the Board concluded applicant's condition was not "permanent and stationary" for purposes of Government Code section 21164 until it

was both medically *and* vocationally permanent and stationary. Hence, City could not retire applicant without her consent.

This petition for writ of review followed.

DISCUSSION

I

Essential to the proper application of Government Code section 21164 on this record, in conjunction with Labor Code sections 139.5(c) and 4850, is an understanding of the historical basis of the key workers' compensation concepts and corresponding statutory benefits and lexicon. To place City's specific contentions in proper context, our discussion will include a review of basic workers' compensation concepts, when appropriate, including temporary and permanent disability indemnity; the purpose of vocational rehabilitation and its statutory evolution in California; the historical meaning of the term "permanent and stationary"; its development by the Supreme Court in *LeBoeuf, supra,* 34 Cal.3d 234; the special benefits available to injured police officers under the Government and Labor Codes; and the role of the Margolin-Bill Greene Reform Act of 1989; in particular, the resultant key amendments to sections 139.5(c) and 4850.

### Basic Workers' Compensation Concepts and Benefits

#### Temporary Disability Benefits

■ Temporary disability indemnity is the basic benefit payable to an injured employee who is temporarily disabled due to industrial injury; it serves as a substitute for wages lost by the employee during the time he or she is actually incapacitated from working. (*Jimenez v. Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 61, 63 [1 Cal.Rptr.2d 660].) Temporary disability benefits cease when the employee returns to work or is deemed medically able to return to work, or when the employee's medical condition becomes permanent and stationary. (*Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179 [29 Cal.Rptr.2d 722] (*Ritchie*).) "Disability ceases to be temporary, and is therefore permanent, when treatment has restored the employee to the full extent that the permanent character of the injury will permit." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed., 2000) Temporary Disability Benefits, § 7.02[2], p. 7-9.)

#### Permanent Disability Benefits

■ Permanent disability, like temporary disability, may compensate for an employee's actual incapacity to work; it also compensates for residual

physical and mental impairments, with "consideration being given to the diminished ability of such injured employee to compete in an open labor market" (§ 4660, subd. (a)). (See generally 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, Permanent Disability Benefits, § 8.01, pp. 8-5 to 8-6.) In general terms, a "permanent disability" is the condition remaining after an injured employee's condition has stabilized, i.e., is permanent and stationary. (*Id.*, at p. 8-5; Cal. Code Regs., tit. 8, § 10152 ["A disability is considered permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time."].) An injured employee cannot be temporarily and permanently disabled at the same time; thus, permanent disability payments do not begin until temporary disability payments cease. (*Ritchie, supra*, 24 Cal.App.4th at p. 1180; § 4650, subd. (b).) Moreover, a permanent disability rating cannot be calculated until an injured employee's medical condition is permanent and stationary. (*LeBoeuf, supra*, 34 Cal.3d at p. 238.) Permanent disability benefits are in addition to any temporary disability benefits, which may be paid or are owing. (§ 4661.)

*Vocational Rehabilitation Prior to January 1, 1990*

■ Vocational rehabilitation is the hub of workers' compensation: it embraces both physical and vocational restoration. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232-233 [110 Cal.Rptr. 144, 514 P.2d 1224]; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, Vocational Rehabilitation, § 35.01, p. 35-8.) To reach this end, the law encourages qualified injured employees to engage in vocational rehabilitation by providing for specified services and payment of designated benefits and costs. (*Ritchie, supra*, 24 Cal.App.4th at p. 1180; see generally 2 Hanna, *supra*, §§ 35.10 to 35.19, pp. 35-22 to 35-37.)

Prior to January 1, 1990, the issue at bar could not have been presented. Whether an employee's condition was permanent and stationary was immaterial to involuntary retirement under Government Code section 21164 where the employee was qualified for vocational rehabilitation. Under Labor Code former Labor Code section 139.5(c),[5] entitlement to temporary disability payments was extended during vocational rehabilitation, and accordingly, for a police officer such as applicant, section 4850 benefits existed in lieu of temporary disability.

---

[5]Prior to January 1, 1990, section 139.5(c) provided: "When a qualified injured worker chooses to enroll in a rehabilitation program, he or she *shall continue to receive temporary disability indemnity payments*, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be." (Stats. 1982, ch. 922, § 2, pp. 3364-3365, italics added.)

In theory, the Legislature had "contemplated the 'ideal situation' in which the [injured employee] is identified as being in need of vocational rehabilitation *while still medically temporarily disabled* and that immediate steps would be taken to initiate the vocational rehabilitation process." (2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, Vocational Rehabilitation, § 35.02, p. 35-10, italics added; *Ponce De Leon, supra*, 42 Cal.Comp.Cases 962, 968.) The fully rehabilitated employee would quickly reenter the work force before his or her condition became permanent and stationary, having received the benefit of continuing temporary disability payments during vocational rehabilitation. (*Ritchie, supra*, 24 Cal.App.4th at p. 1181.) Thereafter, permanent disability would be rated, and a finite number of permanent disability payments would commence to help ease the employee's return to the labor market. The employer, on the other hand, received the benefit of a permanent disability rating reflecting the injured employee's fully rehabilitated medical *and vocational* status. In actual practice, however, the ideal situation rarely occurred. (2 Hanna, *supra*, § 35.02, p. 35-10; *Ponce De Leon, supra*, 42 Cal.Comp.Cases 962, 968.) Usually, for any number of reasons, vocational rehabilitation procedures did not begin until after the injured employee was "medically rehabilitated" and had "become stationary from a purely medical standpoint." (*Ponce De Leon, supra*, at p. 968.) Because temporary disability and permanent disability cannot be paid at the same time, it was customary to defer the latter until vocational rehabilitation was completed. (2 Herlick, Cal. Workers' Compensation Law (5th ed. 2000) § 21.3, pp. 21-20 to 21-22; *Tangye v. Beck, supra*, 43 Cal.Comp.Cases 3, 7.)

*LeBoeuf* was decided within this milieu, and the judicially created distinction between medically and vocationally permanent and stationary was embedded in workers' compensation law for purposes of accurately assessing permanent disability entitlement.

*LeBoeuf: Judicial Genesis of "Vocationally Permanent and Stationary"*

*LeBoeuf, supra*, 34 Cal.3d 234 arose in the context of a petition to reopen for an increased permanent disability award *after* completion of the vocational rehabilitation process. Initially, injury and permanent disability were contested and litigated in *LeBoeuf*. A determination regarding vocational rehabilitation entitlement was deferred pending the Board's decision on injury. The Board found injury and awarded permanent disability benefits to the employee based on a 60 percent rating. (*Id.* at p. 238.) The Rehabilitation Bureau (currently the Rehabilitation Unit (hereafter RU)) then issued its determination regarding employee LeBoeuf's entitlement to vocational rehabilitation. It was not disputed he was *medically* eligible for vocational

rehabilitation because his injury prevented him from returning to his usual and customary occupation. (*Id.* at p. 239.) However, due to the severity of the disability, the RU found the employee was not likely to benefit from vocational rehabilitation and return to suitable gainful employment. Accordingly, the RU determined the employee was *vocationally* ineligible for vocational rehabilitation and thus not a qualified injured worker (QIW) under former section 139.5(c). (34 Cal.3d at pp. 239-240.)

LeBoeuf then filed a petition to reopen his prior permanent disability award, seeking an increase in his rating to 100 percent based on his total inability to compete in the open labor market. (*LeBoeuf, supra*, 34 Cal.3d at p. 240.) The primary issue presented to the Supreme Court was whether a decision by the RU finding the injured employee was not a QIW for vocational rehabilitation purposes constituted good cause to reopen his prior permanent disability award. (*Id.* at pp. 240-241.) The Supreme Court held that it was and remanded the matter to the Board to take further evidence on the issue of increased permanent disability. Inability to be retrained for any suitable employment, stated the court, was a factor to be considered in calculating an injured employee's permanent disability rating. (*Id.* at p. 243.) "The statutory scheme envisions that vocational rehabilitation will be provided an injured worker *before* a final decision is reached on the nature and extent of his or her permanent disability." (*Id:* at p. 242, italics in original.)

The court additionally opined as follows: "If job training makes it possible for a worker to compete in a new sector of the labor market for which he or she was previously unprepared, the worker's permanent disability rating and award will reflect this fact." (*LeBoeuf, supra*, 34 Cal.3d at p. 243.) The court emphasized " ' "[i]t seems clear that [the Legislature] intended a worker's disability should not be permanent and stationary until he was both vocationally and medically rehabilitated." ' (*Webb* v. *Workers' Comp. Appeals Bd.* [(1980)] 28 Cal.3d [621,] 627 [170 Cal.Rptr. 32, 620 P.2d 618], quoting from *Ponce De Leon* v. *Glaser Bros.*[, *supra*,] 42 Cal.Comp.Cases 962, 968; see also *Tangye* v. *Henry C. Beck and Co.*[, *supra*,] 43 Cal.Comp.Cases 3, 7.) This is to ensure that the permanent disability rating upon which an award is based accurately reflects both the permanent and vocational disabilities. [¶] Establishing the right to rehabilitation benefits prior to any final determination of a worker's permanent disability is consistent with the general rule that consideration should be given to the injured workers' 'diminished ability . . . to compete in an open labor market.' " (*LeBoeuf, supra*, at pp. 242-243; accord, *Gill* v. *Workers' Comp. Appeals Bd.* (1985) 167 Cal.App.3d 306, 309-310 [213 Cal.Rptr. 140].)

From a procedural standpoint, this court acknowledges a *LeBoeuf* situation is unlikely to occur under the current vocational rehabilitation statutes;

nonetheless, we emphasize that *LeBoeuf* remains good law. Against this background, the Legislature in 1989 created "maintenance allowance" to replace "temporary disability" as compensation for injured employees during vocational rehabilitation *after* their condition is declared medically permanent and stationary.

### Vocational Rehabilitation Benefits After January 1, 1990

As part of the Margolin-Bill Greene Reform Act of 1989, the Legislature enacted sections 4635 through 4647, which significantly changed many of the requirements imposed on employers and employees concerning vocational rehabilitation for injuries on or after January 1, 1990. (See generally 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, Vocational Rehabilitation, § 35.03[2], pp. 35-12 to 35-13.)

Section 139.5(c) also was amended to provide for the continuation of temporary disability payments during vocational rehabilitation until the employee's medical condition is permanent and stationary, at which time the temporary disability payments cease and the employee becomes entitled to receive "maintenance allowance" payments.[6] (2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, Vocational Rehabilitation, § 35.03[2], p. 35-12.) Maintenance allowance payments are compensated at a lower weekly rate than vocational rehabilitation temporary disability payments. (§ 139.5, subd. (d)(1).) Like temporary disability payments (§ 4653), maintenance allowance payments are computed at two-thirds of the employee's average weekly earnings on the date of injury (§ 139.5, subd. (d)(1)). However, maintenance allowance payments are paid currently at a weekly maximum of $246 (*ibid.*); whereas, the current weekly statutory maximum for temporary disability payments is $735 (§ 4453, subd. (a)(7)). Obviously, the intent of the Legislature in creating maintenance allowance payments once an employee's condition is permanent and stationary was to provide a financial incentive to quickly complete vocational rehabilitation.[7] (See *Ritchie, supra,* 24 Cal.App.4th at p. 1183.) "In no event shall temporary disability indemnity and maintenance allowance be payable concurrently." (§ 139.5, subd. (d)(2).)

---

[6]At the time of applicant's injuries in 1991 and 1992, section 139.5(c) provided as follows: "When an employee is determined to be medically eligible and chooses to enroll in a vocational rehabilitation program, he or she shall continue to receive temporary disability indemnity payments, *and, after his or her medical condition becomes permanent and stationary, a maintenance allowance.* The employee also shall receive living expenses necessitated by the vocational rehabilitation services, together with all reasonable and necessary vocational training, at the expense of the employer." (Stats. 1990, ch. 478, § 19, p. 2681, italics added.)

[7]The Legislature solidified this intention in 1993 when it again considerably amended section 139.5(c) and further restricted vocational rehabilitation benefits, payments and

Employees have the "option" under subdivision (d)(2) of section 139.5 to supplement the lower weekly maintenance allowance payments with advances deducted from "permanent disability indemnity due or payable" up to an amount not to exceed the temporary disability rate. This provision clearly requires the employee's medical condition to be permanent and stationary and ratable because permanent disability "due or payable" to supplement the maintenance allowance payments during vocational rehabilitation cannot otherwise be estimated or assessed. Consequently, injured employees in vocational rehabilitation routinely have their permanent disability rating determined either before or while engaged in vocational rehabilitation. (See *Mosier v. Travelers Ins. Co.* (1992) 12 Cal. Workers' Comp. Rptr. 12, 13.)

We turn our attention now to an overview of the workers' compensation benefits and issues exclusive to police officers in the PERS system such as applicant.

*Special Compensation Benefits and Issues Exclusive to PERS Police Officers*

■ Section 4850 provides an eligible injured police officer full salary "in lieu of temporary disability payments *or maintenance allowance payments* under [s]ection 139.5" for one year or until such earlier date when the

---

costs. (Stats. 1993, ch. 121, §§ 22, 77, pp. 1267-1268, 1341; see generally 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, Vocational Rehabilitation, § 35.03[3], pp. 35-13 to 35-15.) The 1993 amendments apply only to injuries occurring on or after January 1, 1994, and would not have affected applicant's vocational rehabilitation herein.

Section 139.5(c) currently provides: "When an employee is determined to be medically eligible and chooses to participate in a vocational rehabilitation program, he or she shall continue to receive temporary disability indemnity payments only until his or her medical condition becomes permanent and stationary and, thereafter, may receive a maintenance allowance. Rehabilitation maintenance allowance payments shall begin after the employee's medical condition becomes permanent and stationary, upon a request for vocational rehabilitation services. Thereafter, the maintenance allowance shall be paid for a period not to exceed 52 weeks in the aggregate, except where the overall cap on vocational rehabilitation services can be exceeded under this section or Section 4642 or subdivision (d) or (e) of Section 4644. [¶] The employee also shall receive additional living expenses necessitated by the vocational rehabilitation services, together with all reasonable and necessary vocational training, at the expense of the employer, but in no event shall the expenses, counseling fees, training, maintenance allowance, and costs associated with, or arising out of, vocational rehabilitation services incurred after the employee's request for vocational rehabilitation services, except temporary disability payments, exceed sixteen thousand dollars ($16,000). The administrative director shall adopt regulations to ensure that the continued receipt of vocational rehabilitation maintenance allowance benefits is dependent upon the injured worker's regular and consistent attendance at, and participation in, his or her vocational rehabilitation training program."

officer is retired on a disability pension.[8] (*Ritchie, supra,* 24 Cal.App.4th at p. 1180, italicized text added by Stats. 1990 (1989-1990 Reg. Sess.) ch. 1550, § 44, pp. 7286-7287 operative Jan. 1, 1991.)[9] If the disability continues beyond one year, the officer is entitled to a continued unpaid leave of absence until retirement and also is permitted to secure whatever regular workers' compensation benefits may be available. (*Ritchie, supra,* 24 Cal.App.4th at pp. 1180-1181.) The extra benefit is intended to compensate employees "who incur the risks of active law enforcement." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra,* Employment Relationships, § 3.114[1], p. 3-92.) Payments made under section 4850 are considered workers' compensation benefits, not salary. (*Boyd v. City of Santa Ana* (1971) 6 Cal.3d 393, 397 [99 Cal.Rptr. 38, 491 P.2d 830].)

Under long-standing law, section 4850 benefits terminate at the time of a valid PERS retirement. (*Ritchie, supra,* 24 Cal.App.4th at pp. 1186-1187; *Gorman v. Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 998, 999-1001 [184 Cal.Rptr. 406]; *State Compensation Ins. Fund v. Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 200, 204 [103 Cal.Rptr. 29].) It is not disputed that section 4850 benefits terminate upon a valid retirement, even if not exhausted, even if a police officer's condition is not yet permanent and stationary, and even if a police officer later receives vocational rehabilitation services. (*Ritchie, supra,* 24 Cal.App.4th at pp. 1186-1189.) In *Gourley v.*

[8]Section 4850 currently provides in pertinent part: "(a) Whenever any city police officer, . . . employed year round on a regular, full-time basis . . . , who is a member of the [PERS] or subject to the County Employees Retirement Law of 1937 . . . , is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, *he or she shall become entitled . . . to a leave of absence while so disabled without loss of salary in lieu of temporary disability payments or maintenance allowance payments under Section 139.5,* if any, which would be payable under this chapter, for the period of the disability, but not exceeding one year, or until that earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3." (Italics added.)

[9]In 1990, section 4850 again was amended in part to add the phrase "or maintenance allowance payments under Section 139.5." (Stats. 1990, ch. 1550, § 44, pp. 7286-7287.) This modification was contained in Assembly Bill No. 2910 (1989-1990 Reg. Sess.) and part of the "cleanup" legislation for the 1989 Workers' Compensation Reform Act. (*Ritchie, supra,* 24 Cal.App.4th at p. 1183.)

At the time of applicant's injuries, section 4850 provided as pertinent: "Whenever any [police officer] is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the city or county, to leave of absence while so disabled without loss of salary in lieu of temporary disability payments *or maintenance allowance payments under Section 139.5,* if any, which would be payable under this chapter, for the period of the disability, but not exceeding one year, or until such earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3." (Stats. 1990 (1989-1990 Reg. Sess.) ch. 1550, § 44, pp. 7286-7287, italics added.)

*City of Napa* (1975) 48 Cal.App.3d 156 [121 Cal.Rptr. 290], this court emphasized: "If the Legislature had intended to give a disabled employee an absolute right to leave of absence with pay for one year, in all probability it would not have included the words 'or until such earlier date as he is retired on permanent disability pension' in Labor Code section 4850." (*Id.* at p. 161.) Moreover, "[i]n like manner, if the Legislature had intended that the employee's retirement (and subsequent termination of his leave of absence under § 4850) was to be at his option, it would not have included the wording 'is retired' in the subject statute." (*Id.* at p. 162.) This decisional law is consistent with the involuntary retirement provision inherent in Government Code section 21164.

Here, City's reliance on *Ritchie, supra,* 24 Cal.App.4th 1174 to support its attempt to retire applicant without her consent under Government Code section 21164 while she was engaged in vocational rehabilitation, however, is misplaced. *Ritchie* easily is distinguished. Officer Ritchie, a police detective, was injured on August 20, 1991, was declared medically permanent and stationary sometime between February and April 1992 and was retired under PERS industrial disability and receiving pension benefits on April 26 or 27, 1992. (24 Cal.App.4th at p. 1178.) He did not contest the retirement, and it became final. He also was evaluated and declared suitable for vocational rehabilitation services on April 27, 1992. (*Ibid.*) The parties finally agreed on a modified plan for law school, but not on the officer's request for regular maintenance allowance payments under Labor Code section 139.5(c) subsequent to the date of his retirement. A conference was held before the RU on October 14, 1992. The RU's denial of Officer Ritchie's request was upheld by the Board under Labor Code section 4853.[10] On review, the Fifth Appellate District affirmed and held section 4853 prohibited receipt of maintenance allowance payments under section 139.5 after the effective date of a valid disability retirement. (24 Cal.App.4th at pp. 1188-1189.)

In our case, unlike *Ritchie,* applicant neither consented to retirement nor was she retired when she sought vocational rehabilitation. The source of the dispute here is City's unilateral attempt to involuntarily retire applicant on a disability pension effective on the last day of her light duty assignment and employment with City in her capacity as a police officer. Her right thereafter to vocational rehabilitation was undisputed. Applicant consistently has maintained she is entitled to the balance of her section 4850 benefits

---

[10]Section 4853 provides: "Whenever such disability of any such officer or employee continues for a period beyond one year, such member shall thereafter be subject as to disability indemnity to the provisions of this division other than Section 4850 during the remainder of the period of said disability or until the effective date of his retirement under the [PERS] Act, and the leave of absence shall continue."

(approximately four months) in lieu of maintenance allowance payments under section 139.5(c) while she was engaged in vocational rehabilitation prior to her disability pension retirement. The disputed retirement date was properly before the Board and is now before this court.

*Meaning of "Permanent and Stationary" in Government Code Section 21164*

Government Code section 21164 provides: "Notwithstanding any other provision of this article, the retirement for disability of a local safety member, other than a school safety member, shall not be effective without the member's consent earlier than the date upon which leave of absence without loss of salary under Section 4850 of the Labor Code because of the disability terminates, or the earlier date during the leave as of which the disability is permanent and stationary as found by the Workers' Compensation Appeals Board." The pivotal issue we resolve here is the meaning of "permanent and stationary" in Government Code section 21164 in light of both the 1989 change to Labor Code section 139.5(c) replacing temporary disability payments with maintenance allowance payments for employees engaged in vocational rehabilitation after their condition is permanent and stationary, and the 1990 change to Labor Code section 4850 specifying police officers are entitled to section 4850 benefits in lieu of maintenance allowance payments as well as temporary disability benefits.

■ The applicable canons of statutory construction, which guide our analysis, are well established. The fundamental rule is to ascertain and effectuate the intent of the Legislature in enacting the statutes. (*Moyer v. Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d 222, 230.) In determining the intent, we examine first the words of the statutes. (*Id.* at p. 231.) Words, however, do not have fixed meanings; they are symbols of thought whose meanings may vary depending upon the context and circumstances in which they are used. (*Henry v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 981, 984 [80 Cal.Rptr.2d 631].) We consider the consequences of our interpretation and avoid constructions that defy common sense, frustrate the apparent intent of the Legislature or might lead to absurdity. (*Id.* at p. 985.) It is presumed the Legislature is aware of the existence of all relevant statutes when it considers a change or amends others. (*Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].) The statutes "should be interpreted in such a way as to make them consistent with each other, rather than obviate one another." (*Ibid.*)

■ We emphasize that statutes in the Labor Code and Government Code concerning the same subject matter must not only be read together but

reconciled whenever feasible toward the common goal of granting additional benefits to public sector law enforcement employees. (See *Tuolumne County Deputy Sheriffs' Assn. v. Board of Administration* (1989) 209 Cal.App.3d 1236, 1239-1240 [257 Cal.Rptr. 824].) ■ This latter principle is particularly compelling in the case at bar, where Government Code section 21164 explicitly defers to the "Workers' Compensation Appeals Board" to determine when an employee's condition is permanent and stationary.

■ This reviewing court, like the Board, is enjoined by section 3202 to construe the workers' compensation provisions of the Labor Code liberally " 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' " (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 726 [100 Cal.Rptr. 301; 493 P.2d 1165]; accord, *Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537 [94 Cal.Rptr.2d 186].) As well, any ambiguity or uncertainty in the meaning of PERS legislation is to be liberally construed in favor of the public employee, as long as such construction is consistent with the clear language and purpose of the statute. (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490 [66 Cal.Rptr.2d 304, 940 P.2d 891]; *Thelander v. City of El Monte* (1983) 147 Cal.App.3d 736, 748 [195 Cal.Rptr. 318].)

■ With these principles in mind, we address the precise arguments raised by City.

*Creation of Maintenance Allowance Neither Overruled LeBoeuf Nor Changed the Subtext of Permanent and Stationary in Workers' Compensation Law*

City argues the creation of maintenance allowance to replace temporary disability as compensation for employees in vocational rehabilitation once their medical condition is declared permanent and stationary under section 139.5(c) substantially changed the analysis of permanent and stationary in *LeBoeuf, supra,* 34 Cal.3d 234, 242-243, *Ponce De Leon, supra,* 42 Cal.Comp.Cases 962, 968, and *Tangye v. Beck, supra,* 43 Cal.Comp.Cases 3, 7. We find no support for this assertion in the statutes, the legislative history or the decisional law.

The clarification of section 4850 by the Legislature in 1990 to allow for full salary in lieu of maintenance allowance payments during vocational rehabilitation left no doubt a PERS police officer continues to receive section 4850 benefits through the covered period while other employees will receive the reduced maintenance allowance payments under section 139.5(c)

during vocational rehabilitation. Regarding the 1990 amendment to section 4850, a report from Senator Greene, who was one of the authors of the 1989 reform legislation and chair of the Senate Committee on Industrial Relations, indicated, in relevant part, as follows: "Full Salary in Lieu of Maintenance Allowance. It is clarified that public safety officers who receive full salary in lieu of temporary disability benefits, which used to continue during participation in rehabilitation, *continue to receive full salary in lieu of the new maintenance allowance* payable during rehabilitation." (Sen. Com. on Industrial Relations, com. on Assem. Bill No. 2910 (1989-1990 Reg. Sess.) Aug. 8, 1990, p. 8, italics added.)

 City relies primarily on *Mosier v. Travelers Ins. Co., supra,* 12 Cal. Workers' Comp. Rptr. 12 (*Mosier*).[11] Reading *Mosier* broadly and out of context, City posits: by replacing temporary disability payments with maintenance allowance payments, the Legislature intended to overrule, sub silentio, the *LeBoeuf* line of cases and then to provide a vehicle by way of Government Code section 21164 to allow City to promptly and unilaterally retire an officer in vocational rehabilitation as soon as her condition is declared medically permanent and stationary. We find nothing in *Mosier* to support City's theory.

In *Mosier*, the carrier objected to a trial setting on the issue of permanent disability because the injured employee was participating in vocational rehabilitation and receiving a maintenance allowance. The WCJ sustained the objection and dismissed the application, relying on *Harklerode v. Young's Market Co.* (1979) 44 Cal.Comp.Cases 561 [7 Cal. Workers' Comp. Rptr. 120] (*Harklerode*). In *Harklerode,* the Board, en banc, had held a permanent disability may be determined pending vocational rehabilitation only if neither party objects or if vocational rehabilitation benefits are not actually being received. (44 Cal.Comp.Cases at p. 562 [7 Cal. Workers' Comp. Rptr. 120].) The WCJ in *Mosier* therefore assumed he could not determine permanent disability if one party objected and dismissed the application for adjudication of permanent disability. Employee Mosier filed a petition for removal. In response, the WCJ confessed error and recommended the Board grant removal, which it did. (*Ibid.*)

The Board panel rescinded the dismissal order. In *Harklerode, supra,* 44 Cal.Comp.Cases at page 562, the Board declared it had followed its decision

---

[11]We note at the outset Board panel decisions and denials of petitions for writ of review reported in the California Compensation Cases and in the California Workers' Compensation Reporter (Cal. Workers' Comp. Rptr.), along with Board denials of petitions for reconsideration also reported periodically in the latter publication, are properly citable authority but only to the extent they point out the contemporaneous interpretation and application of the workers' compensation laws by the Board. (*Smith v. Workers' Comp. Appeals Bd., supra,* 79 Cal.App.4th at p. 537, fn. 2.) They have no stare decisis effect. (*Ibid.*)

in *Tangye v. Beck, supra,* 43 Cal.Comp.Cases 3. (*Mosier, supra,* 21 Cal. Workers' Comp. Rptr. 12.) And in *Tangye v. Beck,* the Board had held an employee's disability could not be finally determined to be permanent and stationary until vocational rehabilitation was completed to ensure temporary disability payments throughout the duration of vocational rehabilitation and to avoid concurrent receipt of permanent disability and temporary disability payments. (*Mosier, supra,* 21 Cal. Workers' Comp. Rptr at p. 13.) However, *Mosier* recognized the 1989 amendment to section 139.5 not only provides for a maintenance allowance after an employee's medical condition is permanent and stationary, but additionally allows the employee to supplement the decreased weekly maintenance allowance payments with advances from permanent disability. Because the indirect economic incentive of cases leading to its decision in *Harklerode* was no longer necessary after the Margolin-Bill Greene Reform Act of 1989, it "therefore seems no longer valid that an applicant cannot have a determination of permanent disability while receiving vocational rehabilitation benefits." (*Mosier,* at p. 13.)

Here, City clearly reads too much into *Mosier*'s recognition that the 1989 and subsequent legislative changes may require a determination of permanent disability prior to the conclusion of vocational rehabilitation. *Mosier* does not discuss *LeBoeuf* for the obvious reason that no change in the Supreme Court's reasoning in *LeBoeuf* was intended by *Mosier.* In *Mosier,* the Board merely recognized the obvious: a determination during vocational rehabilitation, for permanent disability rating purposes, of whether an employee's medical condition is permanent and stationary will allow for a more accurate calculation of the amount of the employee's ultimate permanent disability award than might be expected to be available to supplement the maintenance allowance. (See § 139.5, subds. (c) & (d).) Contrary to City's insistence, we find no indication in *Mosier* of legislative intent to enact a meaningless provision with its 1990 clarification of section 4850. Canons of statutory construction, as well as common sense and logic, prevent us from construing section 4850 to provide for a maintenance allowance benefit in addition to temporary disability *and* simultaneously make the full salary in lieu of maintenance allowance provision unavailable to injured police officers in vocational rehabilitation.

The Board decision in *Girard v. West Sacramento Police Dept.* (1997) 25 Cal. Workers' Comp. Rptr. 339 is more to the point. In *Girard,* the Board rescinded a WCJ decision refusing to award section 4850 benefits to a police officer who was medically permanent and stationary but who was participating in a vocational rehabilitation program. Like City in this case, when Officer Girard became eligible for section 4850 benefits in lieu of a maintenance allowance while participating in vocational rehabilitation, the City

of Sacramento placed the officer on involuntary disability retirement status under Government Code section 21164 and terminated his section 4850 benefits.

The Board in *Girard*, as here, emphasized the 1990 amendment to section 4850 clarified that police officers are entitled to full pay, not just in lieu of temporary disability, but specifically and expressly in lieu of the maintenance allowance paid under section 139.5(c). The Board opined the Legislature itself specifically differentiates the medically permanent and stationary element of permanent disability by denoting the maintenance allowance under section 139.5(c) is not payable until an employee's medical condition becomes permanent and stationary. (§ 139.5(c); *Girard v. West Sacramento Police Dept.*, *supra*, 25 Cal. Workers' Comp. Rptr. 339.)

Turning to the provision on involuntary retirement in Government Code section 21164, the panel in *Girard*, like the instant panel, noted that a police officer could not be retired involuntarily prior to expiration of Labor Code section 4850 benefits or the earlier date "as of which the disability is permanent and stationary as found by the Workers' Compensation Appeals Board." (Gov. Code, § 21164.) *Girard* reviewed the well-accepted Board definition of "permanent and stationary" set out in *Ponce De Leon*, *supra*, 42 Cal.Comp.Cases 962, 968, and approved in *LeBoeuf*, *supra*, 34 Cal.3d 234. Reading the 1989 and 1990 amendments in light of existing law, the Board correctly concluded the existing definition of permanent and stationary remained intact because the statutory changes specified that an employee's disability need only be found medically permanent and stationary in order to trigger provision of the maintenance allowance during vocational rehabilitation. Clearly, finding an officer's medical condition is permanent and stationary for purposes of terminating a temporary disability and commencing maintenance allowance payments during vocational rehabilitation is not equivalent to a Board final finding that the officer's condition is medically and vocationally permanent and stationary for purposes of Government Code section 21164. The attempt to involuntarily retire Officer Girard while he was in vocational rehabilitation, as here, was not legally effective because the officer was entitled to continued payment of his section 4850 benefits.

Similarly in *Tognetti v. Town of Hillsborough*, *supra*, SFO 354134, 356695, the Board correctly determined involuntary retirement was not valid where the police officer was only medically permanent and stationary. Rather, he was entitled to receive section 4850 benefits in lieu of maintenance allowance payments while engaged in vocational rehabilitation.

Furthermore, the Board decisions on this issue contradict City's argument, with a single isolated exception. In *Fogle*, *supra*, 60 Cal.Comp.Cases 760,

the Board panel reached a result opposite from *Tognetti* and from the subsequent decisions in this case and *Girard. Fogle* is an anomaly. It is not dispositive of the issues raised in this case. It is not to be cited as authority for a municipality such as City to invoke Government Code section 21164 to involuntarily retire a police officer in vocational rehabilitation and terminate Labor Code section 4850 benefits simply because the officer's medical condition is "permanent and stationary."

In summary, we readily discern that the Legislature did not intend to change the long-standing meaning of "permanent and stationary" in the context of the workers' compensation law for purposes of involuntary retirement under Government Code section 21164. The Legislature clearly referred to "medically" permanent and stationary in Labor Code section 139.5(c) and, aware that the existing definition included both medically *and* vocationally "permanent and stationary," declined to amend Government Code section 21164.[12] Moreover, by express statutory language in Labor Code section 4850, the Legislature mandates payment of full salary in lieu of maintenance allowance payments during vocational rehabilitation under section 139.5(c). Applicant, accordingly, is entitled to the balance of her section 4850 benefits for the time she engaged in vocational rehabilitation.

*Effect of the Stipulation of Permanent and Stationary Status*

City argues the parties in this case stipulated applicant's status was permanent and stationary as of June 16, 1995, and applicant should be held to the stipulation as an admission of her status for purposes of involuntary retirement. The minutes of an August 25, 1995 hearing before the WCJ contained the following stipulation: "Applicant's permanent and stationary date is June 16, 1995." This one-page report of the minutes continuing the matter for a hearing set forth one other stipulation and three issues to be decided. It also noted the Board would obtain informal ratings for the reports from the medical-legal evaluators.

Courts may interpret stipulations to determine their effect. (*Western Pioneer Ins. Co. v. Estate of Taira* (1982) 136 Cal.App.3d 174, 182 [185

---

[12]In 1990 the Legislature amended Government Code section 21164 (former § 21025.4) to give authority in disability determinations to the PERS Board over designated school safety members. (Stats. 1990, ch. 658, § 27, p. 3172).) However, the amendment did not reflect changes to the meaning of "permanent and stationary" that City urges were made by implication with the 1989 and 1990 addition of maintenance allowance payments to sections 139.5(c) and 4850. Again in 1995, Government Code section 21164 was amended, but these changes were merely technical in nature and not substantive. (See fn. 1, *ante*.)

Cal.Rptr. 887].) On September 12, 1995, applicant's attorney notified the WCJ and clarified the stipulation on permanent disability pertained specifically to applicant's medical status because she was not yet vocationally permanent and stationery. Counsel's explanation of the stipulation was obvious, as the issues to be addressed concerned applicant's medical status. The stipulation was necessary in order for the Board to render a permanent disability rating. We will not twist the language of the stipulation in this case in a manner that disposes of the major issue presented. (See, e.g., *Burrows v. State of California* (1968) 260 Cal.App.2d 29, 33 [66 Cal.Rptr. 868] ["Obviously, plaintiffs did not intend to stipulate away their case while urging it"].) The stipulation did not apply to applicant's vocational permanent and stationary status or amount to a finding of permanent and stationary under Government Code section 21164. It merely reflected the obvious; to wit, applicant's condition was appropriate for permanent disability determination.

### Effect of Repeal of Government Code Section 21025.6

City finds significance in the Legislature's 1990 repeal of Government Code section 21025.6.[13] According to City, repeal of this provision shows an intent to allow involuntary retirement at any time and consequential termination of Labor Code section 4850 benefits without restriction, even though an employee is in a vocational rehabilitation program. We note former Government Code section 21025.6 does not address the involuntary aspects of retirement covered by Government Code section 21164. The latter section expressly states: *"Notwithstanding any other provision of this article*, the retirement . . . shall not be effective without the member's consent earlier

---

[13]Government Code section 21025.6, as amended in 1989, provided:

"Notwithstanding any other provision of this article, the retirement of a member who has been offered enrollment in a rehabilitation program provided by the employer, or appointing power if he or she is a state member, shall not become effective until the rehabilitation program is terminated by any of the following:

"(a) The employer or appointing power determines that the rehabilitation program is ineffective and cancels the member's enrollment in the program, or

"(b) The member requests release from the rehabilitation program.

"(c) The member rejects the offer of enrollment in the rehabilitation program within 30 days after notice by the Public Employees' Retirement System of his or her eligibility for disability retirement.

"(d) The member completes the rehabilitation program.

"If a member pursuant to a rehabilitation program enters a position in state service, he or she shall be retired thereafter for disability only in accordance with provisions of this part other than this section if he or she becomes incapacitated for performance of duty in that position. The disability shall be deemed to be industrial if the disability resulting in enrollment in the program was industrial, unless Section 21202.5 applies." (Stats. 1989, ch. 192, § 1, p. 1177.)

than [the termination of § 4850 benefits or the Board determines the disability is permanent and stationary]." (*Ibid.*, italics added.)

Former Government Code section 21025.6 addressed the effective date of retirement for employees in rehabilitation programs and delayed the date until completion or termination of the rehabilitation program. By repealing Government Code section 21025.6, the Legislature no longer required an employee to terminate a rehabilitation program in order to receive disability retirement benefits. (See, e.g., Assem. Com. on Ways and Means, Sen. Bill No. 2471 (1989-1990 Reg. Sess.) June 27, 1990 ["This bill would make various changes to [PERS] Law. Specifically, the bill would: [¶] 1) Delete a requirement that if a member has been offered enrollment in a rehabilitation program, the program must be terminated as specified before the member may receive disability retirement benefits."].)

We interpret the legislative intent, as relevant, to allow a PERS police officer engaged in vocational rehabilitation, who otherwise has exhausted her section 4850 benefits, to receive disability pension payments rather than being restricted to the lower paying section 139.5(c) maintenance allowance payments. In summary, the repealed provision said nothing about forced retirement. We decline to view its repeal as an expression of legislative intent to negate the amendment of section 4850 continuing a police officer's full salary benefit, as available, through the period of receipt of vocational rehabilitation.

In conclusion, to accept City's construction of the 1989 and 1990 legislative changes to Labor Code sections 139.5(c) and 4850, we must turn a blind eye to unequivocal statutory language. We then would have to endorse City's untenable position and determine as soon as a police officer is medically permanent and stationary, and therefore eligible for continuation of payment of section 4850 benefits while engaged in vocational rehabilitation, he or she can be involuntarily retired under Government Code section 21164, thereby defeating the entitlement to section 4850 benefits during the period the maintenance allowance is payable under section 139.5(c). We cannot ignore the precepts of statutory construction and common sense.

Accordingly, we decide that, as a matter of law, applicant is entitled to the balance of her section 4850 benefits in lieu of maintenance allowance payments under section 139.5 for the period of time she engaged in vocational rehabilitation. The parties shall make the appropriate adjustments to take into consideration credit for the disability pension payments, if any, advanced to applicant during the relevant time frame.

II*

## DISPOSITION

Consistent with and for the reasons discussed above, the Board's decision after reconsideration is affirmed. Applicant shall recover her costs on appeal.

Kline, P. J., and Ruvolo, J., concurred.

Petitioners' petition for review by the Supreme Court was denied March 21, 2001.

*See footnote, *ante*, page 601.